Marya Lenn Yee, Esq. (MY 4608)
Amy C. Opp, Esq. (AO 2677)
DONOVAN & YEE LLP
110 Greene Street, Suite 700
New York, New York 10012
(212) 226-7700

*Attorneys for Plaintiff*
*Anna Sui Corp.*


**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
**ANNA SUI CORP.,**

              **Plaintiff,**

    -v.-            **07 Civ. 3235 (TPG)**

**FOREVER 21, INC., FOREVER 21 RETAIL, INC.,**
**FOREVER 21 LOGISTICS, LLC,**
**DO WON CHANG, JIN SOOK CHANG,**
**GADZOOKS, INC., GERALD P. SZCZEPANSKI**
**and JOHN DOES 1 to 20,**

             **Defendants.**
-------------------------------------------------------------------x

<u>**PLAINTIFF'S MEMORANDUM OF LAW IN**</u>
<u>**SUPPORT OF PLAINTIFF'S MOTION FOR CONTEMPT AND**</u>
<u>**OTHER RELIEF PURSUANT TO FRCP 37(b)**</u>

Plaintiff Anna Sui Corp. ("Plaintiff") submits this Memorandum of Law, together with the accompanying declaration of Marya Lenn Yee, Esq. and the exhibits thereto ("Yee Dec."), in support of its Motion for an Order holding Defendants Forever 21, Inc., Forever 21 Retail, Inc., Forever 21 Logistics, LLC, Do Won Chang and Jin Sook Chang (collectively "Defendants") in Contempt pursuant to Rule 37(b) of the Federal Rules of Civil Procedure.

## I.     INTRODUCTION

As this Court is well aware, this case centers on Defendants' repeated willful infringement of Plaintiff's copyrighted print and fabric designs (the "Sui Designs"). Defendants have intentionally copied over two dozen of the Sui Designs and offered dozens of infringing garments which copy the Sui Designs (the "Infringing Designs") for sale in hundreds of Forever 21 stores and on the Forever 21 website located at www.forever21.com (together, the "Forever 21 Stores.")

In an effort to prevent future infringements of the Sui Designs, Plaintiff filed a Motion for Expedited Discovery on December 10, 2007, in hopes of identifying infringements in Defendants' manufacturing pipeline at a point sufficiently early in the distribution system to make the injunction effective. Your Honor denied Plaintiff's Motion, but with leave to renew in the event that Plaintiff discovered any additional infringement by Defendants. On April 14, 2008, while making an ordinary periodic review of Defendants' website, Plaintiff discovered yet *another* blatant and willful infringement by Defendants, causing Plaintiff to file its Renewed Motion for Expedited Discovery on April 16, 2008.

II.    **THE APRIL 18 ORDER**

In response to Plaintiff's Renewed Motion for Expedited Discovery, this Court entered an Order dated April 18, 2008 (the "April 18 Order"), requiring Defendants to deliver certain documents to Plaintiff on an expedited basis, the purpose of which *inter alia* was to provide Plaintiff with the necessary information to seek the proper injunctive relief should Defendants have additional infringements of the Sui Designs in its pipeline, as well as to cure major deficiencies in Defendants' prior document productions with respect to the Infringing Designs already identified by Plaintiff.  *See* Exhibit B to Yee Dec.

Pursuant to the Court's Order dated May 8, 2008, Defendants' documents were due June 6, 2008.  *See* Exhibit C to Yee Dec.  On June 6, 2008, Plaintiff's counsel received a package from Defendants' counsel enclosing a mere 39 pages of documents (several of which were duplicates) responsive to the demands made in Paragraphs 1, 2, 4 and 5 of the April 18 Order.  Defendants failed to produce the expedited discovery required under Paragraphs 3 and 6 (hereinafter the "Paragraphs 3 and 6 Discovery"), instead offering Plaintiff the opportunity to inspect copies of such documents.  Defendants placed outrageous and baseless unilateral restrictions on Plaintiff's access to the Paragraphs 3 and 6 Discovery (*see* Exhibit D to Yee Dec.) clearly designed to prevent Plaintiff from possessing the necessary information to effectively seek injunctive relief.

Plaintiff objected to Defendants' restrictions (*see* Exhibit D to Yee Dec.), but proceeded with an initial review in hopes of being able to limit the number of documents for which it would ultimately need this Court's intervention to compel compliance.  The initial review was conducted by Plaintiff's counsel on June 11 and June 12.

2

The Paragraphs 3 and 6 Discovery, made available for inspection only, was mainly comprised of one particular type of document, which showed pictures of six Forever 21 garments per page, with all other information redacted. There were no item codes or other information sufficient for Plaintiff to identify the garment. Each garment (which appeared to be a thumbnail of the image) was so reduced in size that it was impossible to ascertain the garment's details[1]. All documents made available for inspection by Defendants were black and white copies of copied documents, not copies of existing originals, and appeared to have been taped together and copied many times over before production, thus exacerbating their poor quality. It was impossible to discern whether many of the garments presented were in fact prints which copied the Sui Designs, making the entire exercise futile and a waste of Plaintiff's time and resources.

Defendants' expedited discovery delivery also included pages and pages of documents showing just one or two Forever 21 garments, with the remaining garments on the page obviously redacted, although Defendants did not take the time to mark the documents redacted. Defendants also did not provide an explanation for the redactions, though the April 18 Order specifically required deliveries of unredacted documents. Indeed, Defendants' counsel offered no reasons when questioned about any of the deficiencies in the expedited discovery.

Defendants' inadequate delivery of the Paragraphs 3 and 6 Discovery is merely the starting point of Defendants' failure to comply with the April 18 Order. Since the

---

[1] Defendants also failed to provide Forever 21 item codes or any other identifying information about each garment, again ostensibly to prevent Plaintiff from being able to seek effective injunctive relief. Defendants did produce some I.B.D. Cost Sheets responsive to Paragraph 6 of the April 18 Order, allegedly for garments it intends to offer for sale within the six months, however, like the rest of Defendants' delivery, the pictures on the I.B.D. cost sheets were so blurred, it was impossible to discern the details on most of the garments.

3

commencement of discovery, Plaintiff has sought discovery of Defendants directly relevant to the alleged infringements: documents sufficient to identify the source of the infringing goods, the quantities bought and sold, and the prices at purchase and sale. To date, Defendants have been as recalcitrant in providing this discovery as they have in abating their offending conduct. In order to redress these issues, Paragraphs 1, 2, 4 and 5 of the April 18 Order required Defendants to produce certain documents kept in the ordinary course of business by Forever 21, to be produced by Defendants by June 6, 2008.

On June 6, 2008, Defendants produced documents allegedly responsive to Paragraphs 1, 2, 4 and 5 of the April 18 Order. Paragraphs 4 and 5 required Defendants to produce unredacted I.B.D. Cost Sheets for each Infringing Design identified in the First Amended Complaint as well as in any further correspondence with Defendants' counsel/and or the Court since the filing of the First Amended Complaint. Of the approximately fifty-eight (58) Infringing Designs at issue in this case, Defendants' June 6 delivery failed to produce unredacted versions of their I.B.D. Cost Sheets for at least thirty-four (34) of the Infringing Designs, without explanation. *See* Exhibit H to Yee Dec.

Defendants were also required, pursuant to Paragraphs 1 and 2 of the April 18 Order, to produce unredacted versions of the Forever 21 All Inventory & Sales Distribution Summaries, or a report providing identical information, for each of the Infringing Designs identified in the First Amended Complaint, as well as for each Infringing Design identified in Plaintiff's correspondence to Defendants' counsel and/or to the Court since the filing and service of the First Amendment Complaint. Defendants failed to produce the All Inventory & Sales Distribution Summaries, or a report providing identical information, for at least 7 Infringing Designs, in direction violation of

4

Paragraphs 1 and 2 of the April 18 Order and again, without explanation. *See* Exhibit I to Yee Dec.

Defendants did produce a report listing similar information as the All Inventory & Sales Distribution Summaries (the "Supplemental Report"), for some of the Infringing Designs. However, for at least sixteen (16) of the Infringing Designs, the information provided in the Supplemental Report was materially different from the initial All Inventory & Sales Distribution Summaries originally produced by Defendants, again in direct violation of Paragraphs 1 and 2 of the April 18 Order, and without explanation. *See* Exhibit J to Yee Dec. Indeed, Defendants have now requested that Plaintiff return the "inadvertently" previously delivered All Inventory & Sales Distribution Summaries, arguing that the Supplemental Reports delivered June 6 supply the identical information. *See* Exhibit K to Yee Dec. The Supplemental Reports do not supply identical information and Defendants are in continued noncompliance with this delivery. Most recently, together with their failed deliveries, Defendants have also beleaguered Plaintiff with demands for discovery unrelated to the April 18 Order, in direct violation of this Court's suspension of all other discovery. *See* Yee Dec. ¶18 and Exhibit L.

It is clear from Defendants' blatant disregard of the April 18 Order that, absent an Order of Contempt, Defendants will continue to defy the Court and refuse to participate in discovery in any meaningful way. Such defiance will continue to delay the resolution of this Action and enable Defendants to continue profiting from their unlawful actions.

### III. DEFENDANTS' FAILURE TO COMPLY WITH THE APRIL 18 ORDER WARRANTS AN AWARD OF SANCTIONS PURSUANT TO FRCP 37(b)

Defendants' failure to comply with the Court's April 18 Order is governed by Rule 37 of the Federal Rules of Civil Procedure. Rule 37 provides a litany of sanctions,

5

including an order to reimburse the opposing party for expenses caused by the failure to cooperate, as well as orders striking portions of pleadings, prohibiting the introduction of evidence, dismissal and default judgment.  *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979).  The sanctions afforded under Rule 37 are not exhaustive and the Court may impose such sanctions as it deems just.  *Kourkounakis v. Russo*, 167 Fed.Appx. 255, 257 (2d Cir. 2006); *JSC Foreign Economic Assoc. Technostroyexport v. International Development and Trade Servs., Inc.*, 2005 WL 1958361 *10 (S.D.N.Y. 2005).

>Rule 37 sanctions serve a threefold purpose.
>
>Preclusionary orders ensure that a party will not be able to profit from its own failure to comply.  Rule 37 strictures are also specific deterrents and, like civil contempt, they seek to secure compliance with the particular order at hand.  Finally, although the most drastic sanctions may not be imposed as 'mere penalties,' courts are free to consider the general deterrent effect their orders may have on the instant case and on other litigation, provided that the party on whom they are imposed is, in some sense, at fault.  *Cine*, 602 F.2d at 1066.

Pursuant to Rule 37, the Court has broad discretion in determining the appropriate degree of sanctions.  *Ashkinazi v. Sapir*, 2005 WL 937597 *4 (S.D.N.Y. 2005); *A.V. by Versace, Inc. v. Gianni Versace, S.P.A.*, 2002 WL 54610 *7 (S.D.N.Y. 2002) ("'[W]hen a party seeks to frustrate [the purpose of the discovery provisions of the Federal Rules of Civil Procedure] by disobeying discovery orders thereby preventing disclosure of facts essential to an adjudication on the merits, severe sanctions are appropriate."); *Kourkounakis*, 167 Fed.Appx. at 257 (Rule 37 affords court broad discretion to curb abusive litigation practices).  The Second Circuit has repeatedly stressed the importance of following discovery orders of the Court, stating that "a party who flouts such orders does so at his peril."  *Intertec Contracting A/S v. Turner Steiner Int'l*, 2001 WL 812224

*11 (S.D.N.Y. 2001); *see also Cine*, 602 F.2d at 1068 ("sanctions must be weighed in light of the full record in the case.") Although strong sanctions are only appropriate for serious violations of court orders, such sanctions are warranted "when the failure to comply with a court order is due to willfulness or bad faith, or is otherwise culpable." *Daval Steel Prods. V. M/K Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991).

Rule 37(b)(2)(C) places the burden on the disobedient party to avoid expenses, including attorneys' fees, by showing that the party's failure is justified or that extenuating circumstances make an award of expenses unjust. *JSC*, 2005 WL 1958361 at *11 (defendants' failure to comply with discovery order resulted in award of over $100,000 in attorneys' fees to plaintiff). Accordingly, expenses are ordinarily awarded absent a finding that the disobedient party acted justifiably. *Id.*

The Rule 37 remedies set forth in Plaintiff's Proposed Order are appropriate given Defendants' blatant disregard of the April 18 Order. Plaintiff has requested that, among other remedies, Your Honor strike Defendants' Answer to the Amended Complaint and/or all affirmative defenses set forth in the Answer, as well as entering a default judgment against Defendants for all garments identified in Exhibits H and I to the Yee Dec.

Such remedies are routinely granted in cases where the defendant's conduct is clearly willful and abusive. For example, in *Jones v. Uris Sales Corp.*, the Second Circuit affirmed the district court's order striking defendant's answer for failure to comply with a subpoena. 373 F.2d 644, 647 (2d Cir. 1967). *See also A.V. by Versace*, 2002 WL 54610 *10 (striking answer and dismissing cross-claim where defendant willfully failed to comply with discovery orders). In *Daval*, the defendants' willful

7

noncompliance with the court's order to produce certain witnesses for deposition resulted in the defendants' being prohibited from presenting any evidence with respect to the plaintiff's "alter ego" claim. 951 F.2d at 1364.

Defendants' deliberately inadequate delivery of the Paragraphs 3 and 6 Discovery was undeniably insufficient, as a majority of the documents were illegible and were obviously doctored, without explanation. The quality of the Paragraphs 3 and 6 Discovery was so abysmal that it was impossible for Plaintiff's counsel to discern the details of most garments, and thereby assess whether said garment is yet another infringement by Defendants of a Sui Design. Further, the number of missing bates-ranges and clearly redacted garment photographs in certain documents in Defendants' expedited discovery delivery reveals that Defendants' intentionally removed many documents, without reason, other than to frustrate any effort made by Plaintiff to seek effective injunctive relief. *See* Exhibit G to Yee Dec.

Defendants' failure to satisfy even the most basic provisions of the April 18 Order, namely delivery of documents responsive to Paragraphs 1, 2, 4 and 5, demonstrates Defendants' continued indifference to the seriousness of its actions. Yee Dec. ¶14. As Plaintiff has established in previous correspondence with the Court, Defendants' are reputed throughout the fashion industry as promoting a business model focused on copying the designs of others in order to turn a quick profit. Defendants' view the cost of the numerous copyright litigations filed against it as the cost of running their business.

Defendants' failure to comply with the April 18 Order was clearly designed in bad faith to prevent Plaintiff from gathering the information necessary to seek proper injunctive relief and to further prosecute this action and Defendants should be punished

accordingly. In accordance with this Court's intentions in issuing the April 18 Order, Defendants should suffer the consequences of failed defenses, be banned from seeking discovery or other relief[2] pending final compliance and pay the costs of this motion and Plaintiff's counsel fees to date regarding the inadequate deliveries.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff Anna Sui Corp., respectfully requests that the Court: (i) grant Plaintiff's motion to hold Defendants in contempt pursuant to FRCP 37(b); and (ii) award Plaintiff such other relief as the Court deems just and proper.

Dated: New York, New York
       June 23, 2008

                                    DONOVAN & YEE LLP
                                    Attorneys for Plaintiff
                                    Anna Sui Corp.


                                    By: __/s/ MARYA LENN YEE__
                                    MARYA LENN YEE (MY 4608)
                                    AMY C. OPP (AO 2677)
                                    The Soho Building
                                    110 Greene Street, Suite 700
                                    New York, New York 10012
                                    (212) 226-7700

---

[2] In addition to repeated recent demands for discovery from Plaintiff, which was suspended in Paragraph 7 of the April 18 Order, Defendants made a Motion to Dismiss certain claims in the First Amended Complaint. Plaintiff should be granted an extension of time to oppose such untimely motion until Defendants' obligations under the April 18 Order are fully met.